# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MEL M. MARIN, | : | CIVIL NO: 1:14-CV-01523 |
| | : | |
| Plaintiff, | : | |
| | : | (Judge Kane) |
| v. | : | |
| | : | |
| JOE SCHMIDER, | : | |
| | : | (Magistrate Judge Schwab) |
| Defendant. | : | |

## REPORT AND RECOMMENDATION

In this civil action, proceeding *via* an amended complaint, the *pro se* plaintiff, Mel Marin ("Marin"), raises federal constitutional claims against the defendant, Joe Schmider ("Schmider"), the former Director of the Pennsylvania Department of Health, Bureau of Emergency Medical Services, pursuant to 42 U.S.C. § 1983, for First Amendment retaliation and violations of Fourteenth Amendment due process. Marin also raises a state-law claim against Schmider for "tortious interference with career." Currently pending is Schmider's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Our recommendations follow.[1]

---

[1]   Very recently, the United States District Court for the Western District of Pennsylvania said this about Marin:

> Plaintiff, also known as Melvin M. Marinkovic, is a serial *pro se* filer who has filed vexatious litigation in this court in *Mel Marin v. The Erie Times, et al.*, 1:11cv102 (Doc. No. 18), *aff'd*, 525

## I.   <u>Relevant Procedural History</u>.

On August 4, 2014, Marin initiated this lawsuit against Schmider by filing a complaint.  *Doc.* 1.  Along with the complaint, Marin filed a motion to proceed *in forma pauperis* that we granted.  *Docs.* 2 & 5.  Approximately 10 days after the complaint was initially filed, Marin filed an amended complaint.  *Doc.* 6.

---

> Fed.Appx. 74 (3d Cir. 2013); *In re: Joseph Fragile, et. al.*, 2:11cv788 (Doc. No. 8); *In re: Joseph Fragile, et al.*, 2:11cv789 (Doc. No. 7), *Mel Marin v. Tom Leslie, et al.*, 2:09cv1453 (Doc. No.s 57 & 58) and *Melvin M. Marinkovic v. Mayor Joseph Sinnott, et al.*, 1:12cv139 (Doc. No. 21). He also has filed over 70 proceedings in other jurisdictions and been placed on the "Vexatious Litigant List" by the State of California in connection with a filing in the San Diego Superior Court at No. 720715. *See* Transmittal Statement of the Bankruptcy Court to Accompany Notice of Appeal (Doc. No. 1–14) in *In re: Joseph Fragile, et al.*, 2:11cv789 (W.D. Pa. June 15, 2011) at 6 n. 3. Plaintiff "was once a law clerk in the federal court and a 9th Circuit extern." Verified First Amended Complaint in *Melvin M. Marinkovic v. Mayor Joseph Sinnott, et al.*, 1:12cv139 (Doc. No. 3) at ¶ 112.
>
> Plaintiff also uses different addresses in different states to maintain his pending cases. He frequently claims not to have received mail at the address he maintains in the court's docket and seeks to reset his own deadlines for compliance with any particular pretrial deadline. A review of his filings in the related dockets reflects the use of such tactics. (cited examples omitted).

*Marin v. McClincy*, 15 F.Supp.3d 602, 607 n.1 (W.D. Pa. 2014).

We have also recently encountered Marin as a litigant in this Court, *see In re: Nomination Petition of Mel M. Marin for the Democratic Nomination for U.S. Representative from the 3rd Congressional District*, 1:14-CV-00669-JEJ-SES (M.D. Pa.).  While that case was short-lived, we are compelled to point out that we did not encounter any of the problems with Marin as described above.

Thereafter, Marin filed a second amended complaint without leave of Court or Schmider's consent as Rule 15 of the Federal Rules of Civil Procedure requires; thus, we struck the second amended complaint from the Docket. *Docs.* 10 & 11.[2] On October 3, 2014, after waiving service of process, Schimder filed the pending motion to dismiss that is ripe for the Court's disposition. *Docs.* 9, 15, 16, 29-1, & 31.[3]

## II.   <u>Legal Standard.</u>

Schmider's motion is brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside,*

---

[2]     More recently, Marin filed a motion to amend that we denied for his failure to comply with the Court's Local Rules. *See Doc.* 46. In that Order, we also instructed Marin not to file any further motions of the kind until this Court issues an Order on the pending dismissal motion, assuming that any of his claims in the current pleading survive or are otherwise dismissed without prejudice. *Id.*

[3]     Marin incorrectly construes Schmider's motion as one for summary judgment and requests that the motion be stricken as pre-mature because of unpublished opinions that are attached as "exhibits." *See Doc.* 29-1 at 10. Since Schmider has complied with Local Rule 7.8(a) by attaching said opinions to the Docket, coupled with the fact that the opinions are solely presented to make the Court aware of their existence and *legal* conclusions, we recommend denying Marin's invitation to strike the motion as pre-mature.

578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)).  While a complaint need only contain "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), and detailed factual allegations are not required, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face."   *Id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). "[L]abels and conclusions" are not enough, and a court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoted case omitted).

In resolving a motion to dismiss, we thus "conduct a two-part analysis." *Fowler, supra*, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. *Id.* at 210–11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoted case omitted). While traditionally focused upon the allegations contained in a complaint, a court may also consider exhibits attached to a complaint, matters of public record, and "an undisputedly authentic document" relied upon by the plaintiff and attached as an exhibit to a defendant's motion to dismiss. *Pension Benefit Guar. Corp. v.*

4

*White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).   Moreover, in a case such as this, a complaint filed by a *pro se* litigant is to be liberally construed and held to a less stringent standard than formal complaints drafted by a lawyer. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).   Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim."   *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

## III.   **Marin's Amended Complaint.**[4]

Marin's amended complaint begins with a discussion about an earlier case he filed in the United States District Court for the Western District of Pennsylvania: *Marin v. McClincy*, 15 F.Supp.3d 602 (W.D. Pa. 2014).   According to Marin, he filed that lawsuit in 2011 and sued officials (the "Meadville Defendants") working in one of the Commonwealth's Emergency Medical Services ("EMS") offices located in Meadville, Pennsylvania.   Marin claims here that he sued the Meadville Defendants for refusing to process his application for a license to work as an Emergency Medical Technician ("EMT") because he had complained to the state office in Harrisburg about "the conduct of the Meadville

---

[4]   We provide the allegations in Marin's amended complaint consistent with the aforementioned legal standard.

office."[5]  *Doc.* 6 at ¶ 5.  During that lawsuit, Marin also claims that the Meadville

Defendants denied any liability on the ground that they could not process the

application without knowing his social security number.  Further, the Meadville

Defendants allegedly contended that they could not process the application without

Schmider's approval.  As that federal case progressed, though, Martin claims here

that he came to learn that the Meadville Defendants actually possessed his social

security number *via* a record turned over to them by the State of California.

In December 2012, while the other lawsuit was ongoing, Marin sent a letter

to Schmider through Certified Mail informing him about the events surrounding

the application.  Marin further requested that Schmider lift the "hold" on the

application for processing and explained that he could not work "meaningfully" in

that he (Marin) "cannot do EMT work [or] other work he was trying to get because

he [could] not pay for gas to look for work."  *Doc.* 6 at ¶ 8.  In response to Marin's

letter, Schmider purportedly sent a "return letter" in which he refused to authorize

the processing of the application.  *Id.* at ¶ 9.  Schmider allegedly took said action

despite his authority to act otherwise.

On January 11, 2013, Marin mailed a second letter to Schmider.  Marin sent

the second letter because he claims that officials from EMS offices located in

Harrisburg and Pittsburgh informed him that the application would not be

---

[5]      For convenience, we will refer to Marin's application for an EMT license
simply as "the application."

processed without Schmider's approval.  In the second letter, also sent through certified mail, Marin claims that he told Schmider that there was no reason to continue delaying the processing of the application, and that the delay was "blocking" his ability to work in his chosen career and forcing him to live in poverty.  Schmider allegedly did not respond to the second letter and Marin's request was not granted.  Thereafter, Marin allegedly sent a third letter about the same issue, to which Schmider again did not respond.  Furthermore, Marin's renewed request to have the application processed was not granted.

As we liberally construe Marin's amended complaint, his primary "chosen career" was to be an EMT.  *See id.* at ¶ 27.  Marin alleges, however, that Schmider's refusal to process the application also "prevented" him from starting "another career" that required "campaigning."  *See id.* at ¶¶ 27-28, 40.  It is unclear to what "other career" Marin is referring since he does not so specify in the amended complaint.[6]  Marin nevertheless claims that, overall, Schmider's alleged refusal to allow the application to be processed was "negligent," done with "deliberate indifference" to his livelihood and right to pursue a chosen occupation,

---

[6]    Based solely on our past dealing with Marin, coupled with the information provided by the District Court for the Western District of Pennsylvania, *Marin v. McClincy*, 15 F.Supp.2d at 616 n. 4, we presume that the second "career" was to be an elected public official.  Again, though, Marin does not specify this in the amended complaint.

and as an "effort to retaliate" for his filing of the earlier federal lawsuit.  *See id.* at ¶ 15.

In light of these allegations, we construe the amended complaint to include the following claims for relief: (1) "First Cause of Action"[7] – a violation of procedural due process; (2) "Second Cause of Action" – a violation of substantive due process; and (3) "Third Cause of Action" - a state-law claim for "tortious interference with career."  Finally, while it is not separately enumerated as its own "cause of action," we liberally construe the amended complaint to include a claim for First Amendment retaliation.  For remedies, Marin seeks declaratory and injunctive relief with respect to the "First Cause of Action."  Otherwise, Marin seeks compensatory and punitive damages.

## IV.    Discussion.

### A. Marin's Federal Claims.

Marin's federal claims are brought pursuant to 42 U.S.C. § 1983.   In pertinent part, § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party

---

[7]    Instead of breaking them down by Counts, Marin separates his claims by using the same header: "Cause of Action."  *See, e.g., Doc.* 6 at 4.  For consistency, we will do the same in this Report.

injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

"Section 1983 is not a source of substantive rights, but merely a method to vindicate violations of federal law committed by state actors." *Pappas v. City of Lebanon*, 331 F.Supp.2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284–85 (2002)). To establish a claim under § 1983, a plaintiff must show that (1) the conduct complained of was committed by persons acting under color of state law and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. *Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).  The Third Circuit has also explained: "[t]he first step in evaluating a [S]ection 1983 claim is to identify the exact contours of the underlying right said to have been violated and to [then] determine whether the plaintiff has alleged a deprivation of a constitutional right at all." *Morrow v. Balaski*, 719 F.3d 160, 165-66 (3d Cir. 2013)(*en banc*)(internal quotations and quoted case omitted).

Schmider does not dispute that the amended complaint includes sufficient allegations plausibly suggesting that he is a state actor.  Our focus, therefore, is to identify the exact contours of the underlying rights said to have been violated and to then determine whether Marin has plausibly alleged a deprivation of such rights.

### 1.  First Amendment Retaliation.

The First Amendment to the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. CONST. amend. I.   A First Amendment retaliation claim generally requires "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)).   "To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).   Moreover, "the key question in determining whether a cognizable First Amendment claim has been stated is whether 'the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights.'" *Thomas,* 463 F.3d at 296 (quoting *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006)).

Here, Schmider argues that the First Amendment retaliation claim should be dismissed because Marin only provides conclusive allegations in support of the same. *See Doc.* 16 at 13-14 n. 4; *Doc.* 31 at 6-7. While the allegations with respect to this claim are not well-organized, or separately discussed in its own "cause of action," we disagree with Schmider's position.

As we liberally construe the allegations in the amended complaint as a whole, we understand Marin to include a First Amendment retaliation claim for Schmider's refusal to allow the application to be processed in retaliation for Marin's filing of the federal lawsuit in 2011, in the United States District Court for the Western District of Pennsylvania. In support of this claim for relief, Marin alleges in the amended complaint that: (1) he had filed a federal lawsuit in 2011 against the Meadville Defendants for their refusal to process the application; (2) he notified Schmider about the situation he was facing and further informed him that officials in offices other than the one in Meadville also refused to process the application without his approval; (3) a missing piece of information -- his social security number -- was now available in order for the application to be processed; and (4) Schmider continuously refused to provide the Meadville Defendants and others with approval to process the application, despite his ability to do so and the other officials' reliance on the same. Furthermore, regarding the latter allegation, we judicially notice that the lawsuit from 2011 was still ongoing when Marin sent

11

his letters to Schmider requesting that the application be processed.

Accepting these allegations as true, which we are required to do, Marin has plausibly shown that he was exercising a constitutionally protected right *via* the filing, and litigation, of the 2011 lawsuit; that an adverse action was taken against him by Schmider in that he continued refusing to allow the application to be processed; and that there is a sufficient causal link between Schmider's refusal to allow the application to be processed, in the face of Marin's requests, and the engaged-in constitutionally protected conduct.[8]   Accordingly, we find that the three elements, *supra,* are satisfied and the claim should proceed.

### 2. Fourteenth Amendment Due Process.

The Fourteenth Amendment to the United States Constitution provides, in pertinent part, that a state shall not "deprive any person of life, liberty, or property, without due process of law. . . ."   U.S. CONST. amend. XIV, § 1.   Due process under the Fourteenth Amendment has both "substantive and procedural components," *Evans v. Sec'y Pa. Dep't of Corr.*, 645 F.3d 650, 658 (3d Cir. 2011), and here we liberally construe the amended complaint to put each component into focus.

---

[8]   Whether the alleged retaliatory action is sufficient to deter a person of ordinary firmness from exercising his or her constitutional rights is a question better left to be decided by a fact-finder.   For present purposes, however, we find that the claim, as pleaded, plausibly states a claim for relief.

### a. Procedural Due Process.

In its essence, procedural due process is the "opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976).  To state a claim for a "deprivation of procedural due process . . . a plaintiff must allege that: (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property;' and (2) the procedures available to him did not provide 'due process of the law.'"  *Hill v. Borough of Kutztown*, 445 F.2d 225, 233–34 (3d Cir. 2006).

In the "first cause of action," Marin does not specify an individual interest of which he was deprived without sufficient procedural protections.  As we read the amended complaint, however, we tend to agree with Schmider's take, that the procedural due process claim relates to a property interest, namely, a property interest in an EMT license.  *See also, e.g., Doc.* 29-1 at 28 ("[These cases] mandate[] the process to confer a career license . . . and [Schmider's] denial of that process entitles Marin to challenge the process under § 1983.").  Thus, we disagree with Marin that this particular claim is premised upon a liberty interest, i.e., the right to engage in an occupation of his choosing.  *See id.* at 28-32.[9]

---

[9]     For Marin's benefit, if he ends up being permitted to file an amended complaint and clarifies that this claim is premised upon a liberty interest relating also to his "other career," he must provide additional allegations further detailing the "other career."  As of right now, there are hardly any allegations to put Schmider on sufficient notice about what that "career" entails.  Furthermore,

Turning to the procedural due process claim as we presently construe it, the District Court for the Western District of Pennsylvania aptly provided the relevant law in *Marin v. McClincy*:

> "[P]rotected interests in property are normally not created by the Constitution. Rather they are created and their dimensions are defined by an independent source such as state statutes or rules entitling the citizen to certain benefits." *Goss v. Lopez*, 419 U.S. 565, 573 (1975) (internal quotations omitted).
>
> There is no Pennsylvania case law or statute that gives plaintiff a protected interest in an EMS license. Nevertheless, "[a] license, once obtained by compliance with law, becomes a valued privilege or right in the nature of property, which may not be suspended or revoked without due process." *Balfour Beatty Const. Inc. v. Dept. of Transp.*, 783 A.2d 901, 908 (Pa. Commw. Ct. 2001). A property right may not be found, however, if the right to practice the occupation has not yet accrued. *See Brady v. Com., St. Bd. of Chiropractic Examiners*, 471 A.2d 572, 575 (1984).
>
> [Furthermore, t]he Supreme Court has refused to recognize a property interest in a benefit which did not automatically renew and was not guaranteed under state law or administrative policy. *Roth*, 408 U.S. at 578. In *Roth*, an assistant professor was hired by Wisconsin State University for a fixed term of one school year. *Id.* at 566. At the end of that term he was informed that he would not be rehired. *Id.* He brought suit alleging a violation of his rights under the Fourteenth Amendment. *Id.* at 568. Wisconsin law provided that public university professors could become tenured employees only after four continuous yearly terms of employment. *Id.* New professors were entitled to nothing beyond one year of employment. *Id.* The Court held that

---

without reaching any conclusions here, we question Marin's ability to be able to plausibly suggest a connection between any lack of sufficient procedural protections in the application process with the alleged deprivation of a liberty interest in his pursuit of, or engagement in, the "other career."

the professor did not have a property interest in continued employment sufficient to invoke the safeguards of due process. *Id.* at 578. Because the professor's employment was for a fixed term and there was no state law providing automatic renewal the plaintiff held no more than "an abstract concern in being rehired." *Id.*

Similar to the fixed term employment at issue in *Roth*, EMS licenses are valid for a finite time and do not automatically renew. *See* 35 Pa.C.S. § 8115(c) (requiring Emergency Medical Technicians to re-register for certification every three years); § 8116(c) (Advanced Emergency Medical Technicians must re-register every two years); § 8117(d) (Paramedics must re-register every two years). "Certifications for employment that do not automatically renew are not considered a property interest under Pennsylvania law." *McDonald v. Pa. St. Police*, Civ. A. No. 9–442, 2009 WL 3241858, *4 (W.D. Pa. Oct. 2, 2009).

In *Lockhart v. Matthew*, 83 F. App'x 498, 499–500 (3d Cir. 2003), an applicant for an EMT license renewal was denied due to indications in his record that he could not meet a lift and carry requirement. *Id.* He was granted three extensions to come forward with evidence of his ability to meet the requirement but failed to provide it. *Id.* at 500. He brought suit alleging violation of due process. *Id.* at 499. The Third Circuit held that the plaintiff did not possess a property interest in an EMT license because it naturally expired and did not automatically renew. *Id.* at 500–01. *See also McDonald v. Pa. St. Police*, Civ. A. No. 9–442, 2009 WL 3241858, *4 (W.D. Pa. Oct. 2, 2009) (citing *Lockhart* for the rule that "[c]ertifications for employment that do not automatically renew are not considered a property interest under Pennsylvania law"); *Speck v. City of Phila.*, Civ. A. No. 6–4976, 2007 WL 2221423, *6 (E.D. Pa. July 31, 2007) (holding that although police officers have a protected interest in continued employment once hired, they do not have a property interest in certification for employment given the fixed term of the license); *Cf. Herz v. Degnan*, 648 F.2d 201, 208 (3d Cir. 1981) (finding a protected interest in a license to practice psychology that automatically renewed upon payment of a fee).

15 F.Supp.3d at 612-13.   Based on this interpretation of the law, Marin's procedural due process claim, as we presently construe it, should be dismissed with prejudice since (1) he never held an EMT license in Pennsylvania; (2) an EMT license in Pennsylvania has a natural expiration; and (3) an EMT license in Pennsylvania is not automatically renewable.[10]

### b.  Substantive Due Process.

The substantive component of the Due Process Clause bars arbitrary, wrongful government action "regardless of the fairness of the procedures used to implement them." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990).  To set forth a substantive due process claim under 42 U.S.C. § 1983, a plaintiff must assert a constitutionally protected liberty or property interest that has been interfered with by a defendant acting under the color of state law. *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972); *DeBlasio v. Zoning Bd. of Adjustment*, 53 F.3d 592 (3d Cir. 1995); *C & C Const. Rehab. Specialists v. Wilmington Hous. Auth.*, No. 95-756, 1996 WL 190011, at *2 (D. Del. Mar. 20 1996).

As before, the parties quibble over what interest is at issue.  Schmider, again, construes the amended complaint as solely addressing a property interest in an EMT license.  *See Doc.* 16 at 17-18; *see also, Doc.* 31 at 8-9.  Marin, on the other hand, clarifies in his brief-in-opposition and contends that the claim is wholly

---

[10]     Because we reach this conclusion, we do not address whether Schmider is entitled to qualified immunity.

premised on a liberty interest, i.e., the right to engage in an occupation of his choosing. *See Doc.* 21-9 at 23-26; *see also, Meyer v. Nebraska*, 262 U.S. 390, 399 (1923)("[The term 'liberty'] denotes not merely freedom from bodily restraint but also the right of the individual to . . . engage in any of the common occupations of life . . . .").

Based on our liberal reading of the amended complaint, coupled with Marin's litigation history on this subject matter, we see where both parties have valid points about the claim's construction. Nevertheless, given Marin's clarification in his brief about this claim for relief, it would be futile for us to engage in a discussion about whether an existing property interest has been sufficiently alleged since it is not even an issue for this claim. At the same time, given Marin's clarification and the absence of merits briefing directly on point, we recommend that the Court withhold any ruling about the pleading sufficiency of this claim or whether Schmider is entitled to qualified immunity, and allow Schmider to file a supplemental motion to dismiss. *See also, DeBlasio*, 53 F.3d at 598 ("Substantive due process is an area of the law 'famous for its controversy, and not known for its simplicity.'")(quoting *Schaper v. City of Huntsville*, 813 F.2d 709, 716 (5th Cir. 1987)).[11]

---

[11]    So Marin is aware, if he is permitted to file a second amended complaint, Schmider would likewise be permitted to file a second motion to dismiss attacking the sufficiency of *all* the claims asserted therein. Also, Marin appears to face an

### B. Marin's State-Law Claim.

Jurisdictional issues aside, Marin's state-law claim, as alleged in the amended complaint, is for "tortious interference with career." Such a claim does not appear to be recognized within the Commonwealth of Pennsylvania. Marin nonetheless asks this Court "to recognize and enforce the tort as captioned, as a new tort in Pennsylvania." *Doc.* 29-1 at 36. It is unnecessary for us to reach that issue, however, since the claim, if recognized, would otherwise be barred against Schnider pursuant to Pennsylvania's doctrine of sovereign immunity. *See also, Doc.* 16 at 21-23 (asserting the sovereign immunity defense).

The Pennsylvania General Assembly, after the judicial abolition of sovereign immunity by the Pennsylvania Supreme Court in *Mayle v. Pa. Dep't of Highways*, 388 A.2d 709 (1978), reaffirmed by statute the concept of immunity for the Commonwealth and its employees. The statute reads:

> Pursuant to section 11 of Article 1 of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue

---

uphill battle if this claim is additionally premised on a liberty interest in his "other career." Quite simply, without fully knowing what the "other career" entailed, we fail to see how said "career" was unreasonably interfered with by Schmider, who is solely alleged to have refused to authorize the processing of the application for certification for an entirely separate career. Moreover, while Marin alleges that he could not work "meaningfully," he does not define the term or otherwise allege that he was wholly foreclosed from finding *any* work to contribute toward the "other career." *See also, Doc.* 29-1 at 35 (Marin asserting that he had "offers of employment with a steel company . . . .").

> to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity. When the General Assembly specifically waives sovereign immunity, a claim against the Commonwealth and its officials and employees shall be brought only in such manner and in such courts and in such cases as directed by the provisions of Title 42 (relating to judiciary and judicial procedure) or 62 (relating to procurement) unless otherwise specifically authorized by statute.

1 Pa. C.S. § 2310.

According to the plain language of the statute, not only the Commonwealth, but also its employees and officials are entitled to immunity. *See also, Moore v. Commonwealth*, 538 A.2d 111, 115 (Pa. Commw. Ct. 1988). Moreover, the General Assembly has expressed only nine exceptions to the grant of sovereign immunity. The exceptions are based on acts of Commonwealth employees. Specifically, the defense of sovereign immunity shall not be raised to claims caused by: (1) the operation of any motor vehicle in the possession or control of a Commonwealth party; (2) acts of health care employees of Commonwealth agency medical facilities or institutions or by a Commonwealth party who is a doctor, dentist, nurse or related health care personnel; (3) the care, custody or control of personal property in the possession or control of Commonwealth parties; (4) a dangerous condition of Commonwealth agency real estate and sidewalks; (5) a dangerous condition of highways under the jurisdiction of a Commonwealth agency created by potholes or sinkholes or other similar conditions created by

natural elements; (6) the care, custody or control of animals in the possession or control of a Commonwealth party; (7) the sale of liquor at Pennsylvania liquor stores; (8) acts of a member of the Pennsylvania military forces; or (9) the administration, manufacture and use of a toxoid or vaccine.. *See* 42 Pa. C.S. § 8522.

The proper test to determine if a Commonwealth employee is protected from liability pursuant to the sovereign-immunity defense under § 2310 is to consider (1) whether the Commonwealth employee was acting within the scope of his or her employment; (2) whether the alleged act which causes injury was negligent and damages would be recoverable but for the availability of the immunity defense; and (3) whether the act fits within one of the nine exceptions to sovereign immunity. *See La Frankie v. Miklich*, 618 A.2d 1145, 1149 (Pa. Commw. Ct. 1992).

Here, no one disputes that Schmider is an employee of the Commonwealth. The allegations in the amended complaint also plausibly suggest that he was acting within the scope of his employment when refusing to authorize the processing of the application. *See Larson v. State Employees' Retirement System*, 553 F.Supp.2d 403, 420 (M.D. Pa. 2008)("Conduct of an employee is within the scope of employment if it is of a kind and nature that the employee is employed to perform; it occurs substantially within the authorized time and space limits; [and] it is

actuated, at least in part, by a purpose to serve the employer . . . .").  Finally, this tort does not fall into any one of the nine categorical exceptions, and Pennsylvania courts have consistently found that the defense of sovereign immunity bars claims of intentional torts. *See La Frankie*, 618 A.2d at 1149; *see also, Stone v. Felsman*, No. 10–0442, 2011 WL 5320738 at *11 (M.D. Pa. Nov. 1, 2011) (finding state law claims of assault, battery, false arrest, false imprisonment and malicious prosecution are barred by sovereign immunity); *Fischer v. Pa. State Police*, No. 07–1653, 2009 WL 650251 at *12 (M.D. Pa. March 10, 2009) (holding claim of intentional infliction of emotional distress against Pennsylvania State Police is barred by sovereign immunity).  Thus, regardless of whether it is a recognized tort claim, Pennsylvania's doctrine of sovereign immunity would otherwise bar it against a defendant such as Schmider, who was acting within the scope of his employment.  This claim, therefore, should be dismissed with prejudice.[12]

---

[12]    Marin also contends that if he were to be permitted to file a second amended complaint, he would include a claim for "intentional interference with prospective economic relationships."  *See Doc.* 29-1 at 35-36.  Upon these allegations, however, said claim, involving a similar intentional tort, would likewise be barred by the same doctrine of sovereign immunity.  Finally, although Marin does not explicitly contend that this claim should be construed as one for intentional inference with a prospective contractual or economic relationship, *but see, Doc.* 16 at 21, the same result would be warranted.

## V.   <u>Recommendations</u>.

Based on the foregoing, **WE RECOMMEND** that:

(1) Marin's request (*see Doc.* 29-1 at 10) to have the pending motion construed as one for summary judgment and also denied as premature be **DENIED**.

(2) Schmider's motion to dismiss (*Doc.* 15) be **GRANTED** in part and **DENIED** in part as follows:

   (a) Schmider's motion should be <u>granted</u> to the extent that (1) Marin fails to state a procedural due process claim premised upon an asserted property interest in an EMT license and (2) sovereign immunity bars his claim for "tortious interference with career."

   (b) Schmider's motion should be <u>denied</u> in all other respects, as discussed herein.

(3) The Court should withhold any ruling on the pleading sufficiency of Marin's substantive due process claim premised on an asserted liberty interest in his right to pursue, or engage in, certain careers.  As well, in the event that Marin is not granted leave to file a second amended complaint, Schmider should also be permitted to file a supplemental motion to dismiss, addressing the substantive due process claim based upon Marin's clarification of the same in his brief-in-opposition.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

Submitted this **26th** day of **May 2015**.

**_S/ Susan E. Schwab_**
Susan E. Schwab
United States Magistrate Judge