**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MEL M. MARIN, | : | CIVIL NO: 1:14-CV-01523 |
| | : | |
| Plaintiff, | : | |
| | : | (Judge Kane) |
| v. | : | |
| | : | (Magistrate Judge Schwab) |
| JOE SCHMIDER, | : | |
| | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATION**

## I.     Introduction.

In this civil action, the *pro se* plaintiff, Mel M. Marin ("Marin"), proceeding *via* an amended complaint, raises federal constitutional claims against the defendant, Joe Schmider ("Schmider"), formerly the Director of the Pennsylvania Department of Health, Bureau of Emergency Medical Services.  Marin also raises a state law claim against Schmider for invasion of privacy.  Currently pending is Schmider's motion to dismiss Marin's amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For the reasons that follow, we recommend granting Schmider's motion in its entirety.

## II.    Procedural and Factual Background.[1]

The sufficiency of Marin's pleadings has come before this Court once before.   Marin's present amended complaint—his third—[2]comes on the heels of United States District Court Judge Kane's adoption of our prior recommendation that Schmider's motion to dismiss be granted in part and denied in part.   *See docs. 47, 57, 58.*   In her Memorandum (*doc. 57*) and Order (*doc. 58*), Judge Kane dismissed with prejudice Marin's Fourteenth Amendment procedural due process claim premised upon an asserted property interest, as well as his state law claim for "tortious interference with career."   Judge Kane also dismissed, but without prejudice,  Marin's Fourteenth Amendment procedural due process claim premised upon an asserted liberty interest.   And, in all other respects, Judge Kane rejected Schmider's  motion, including his  argument that Marin failed to state a First

---

[1] Considering that we write primarily for the parties, we need not repeat the background of this case, which is set forth in our May 26, 2015 Report and Recommendation (*see doc. 47*).   Instead, we pick up the thread where Judge Kane left off in her Order (*doc. 58*) and accompanying Memorandum (*doc. 57*).

[2] Marin filed the original complaint on August 4, 2014 (*see doc. 1*); the amended complaint 11 days later on August 15, 2014 (*see doc. 6*); and the second amended complaint one month later on September 15, 2014 (*see doc. 10*).   We ordered, however, that the second amended complaint (*doc. 10*) be struck from the docket because of Marin's noncompliance with Rule 15(a)(2) of the Federal Rules of Civil Procedure.   *See doc. 11.* And, finally, on December 8, 2015, we permitted Schmider to file the present amended complaint. *See doc. 69.*  Thus, although it is Marin's fourth pleading, it is only his third amended complaint.   To avoid any confusion, however, we will simply refer to his third amended complaint as the "Amended Complaint."

2

Amendment retaliation claim.  Judge Kane then referred the matter back to the undersigned for further pretrial management.

Since being referred the matter, Marin has filed the instant Amended Complaint.  In order to test the sufficiency of Marin's pleadings for a second time, we succinctly state the facts as follows:

The present litigation, as illustrated in the Amended Complaint, is the second act of a longstanding dispute between Marin and those tasked with processing applications for Pennsylvania Emergency Medical Technician ("EMT") licenses.  The first act commenced in 2011, after Marin filed a lawsuit[3] against certain "officials" working at an Emergency Medical Services Office located in Meadville, Pennsylvania (hereinafter, the "Meadville Office").  *Doc. 70* at 2. Though separated by a number of years, the 2011 Action and the instant action are united by the same underlying event: the refusal to process Marin's application for an EMT license.

In the 2011 Action, Marin maintained that the Meadville Office refused to process his application for an EMT license in retaliation for him complaining[4] about the conduct of individuals from that office.  *Id.*  As asserted by the

---

[3] *See Marin v. McClincy*, 15 F. Supp. 3d 602 (W.D. Pa. 2014).  For ease of reference, we refer to this lawsuit as the "2011 Action."

[4] Specifically, Marin alleges that "he complained to the state office in Harrisburg." *Doc. 70* at 2.

defendants in the 2011 Action, however, the problem was not their allegedly vindictive motivations, but rather, was the omission of Marin's social security number in the EMT application. *Id.* at 3. To substantiate their argument, the defendants filed Marin's EMT application with the United States District Court for the Western District as an exhibit. *Id.* at 4. The exhibit clearly demonstrated that Marin had failed to place his social security number on the application itself. *See doc. 77-2* at 17. The exhibit also revealed, however, that Marin had included his California EMT application, complete with social security number, along with the rest of his Pennsylvania application materials.[5] *Id*. at 19; *doc. 70* at 3.

Nearly a year and a half after he made complaints to the "state office in Harrisburg" and ultimately filed the 2011 Action, Marin sent Schmider[6] a letter *via* certified mail on December 28, 2012, apprising Schmider of his acrimonious history with the Meadville Office. *Doc. 70* at 2, 3. Marin used the letter as an opportunity to not only inform Schmider of the alleged harm brought by the Meadville Office's intransigence, but also, to urge Schmider that he should "lift the hold" on Marin's EMT application. *Id*. at 3. According to Marin, there was no

---

[5] District Court Judge Cercone, of the United States District Court for the Western District of Pennsylvania, eventually granted summary judgment in favor of the defendants in the 2011 Action. *See Marin*, 15 F.Supp. 3d at 619.

[6] Although not stated directly by Marin in the Amended Complaint, Schmider was the Director of the Pennsylvania Department of Health, Bureau of Emergency Medical Services at the time of the alleged retaliatory behavior referenced above in the 2011 Action.

legitimate reason to refrain from processing his application because his social security number did appear somewhere in his application file. *Id*. at 3-4. Marin's letter also contained an ultimatum: that Schmider grant his request within fifteen days or face the possibility of personal liability for various torts allegedly committed by the Meadville Office. *Id.* Marin sent Schmider two additional letters in January of 2013, both of which reiterated Marin's earlier assertions. *Id.* at 7. None of the letters, however, had their desired effect as Schmider neither lifted the "hold" on the application, nor ordered the processing thereof. *Id*. Thus, as promised, Marin subsequently commenced this action against Schmider.

Liberally construing the allegations in the Amended Complaint, it is our view that Marin has levied the following claims against Schmider: (1) a First Amendment retaliation claim; (2) a Fourteenth Amendment substantive due process claim; and (3) a supplemental state law claim for invasion of privacy. With regard to remedies, Marin seeks declaratory and injunctive relief as to his substantive due process claim, but requests only compensatory and punitive damages as to his other two claims.

In response to the allegations in the Amended Complaint, Schmider filed a motion (*doc. 74*) to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. That motion has been fully briefed and is ripe for disposition.

### III.   Motion to Dismiss and Pleading Standards.

A motion to dismiss, pursuant to Rule 12(b)(6), "tests the sufficiency of the complaint against the pleading requirements of Rule 8(a)." *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 769-70 (M.D. Pa. 2012). According to Rule 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  When reviewing a motion to dismiss, "[w]e must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).   In making that determination, we "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

With respect to the benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years.  Beginning with the Supreme Court's opinion in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), continuing with our opinion in *Phillips* [*v. County of Allegheny,* 515 F.3d 224, 230 (3d Cir.2008)], and culminating recently with the Supreme Court's decision in *Ashcroft v. Iqbal* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), pleading standards have seemingly shifted from simple

6

> notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 209–10 (3d Cir. 2009).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the plaintiff's claim is and of the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). While detailed factual allegations are not necessary, more is required than labels, conclusions, and a formulaic recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler*, 578 F.3d at 211. "A complaint has to 'show' such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief can be granted, the court must accept as true all well-pleaded factual allegations in the complaint, and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.*, 20 F.3d 1250, 1261 (3d Cir. 1994). A court, however, "need not credit a complaint's bald assertions or legal conclusions when

deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

In conducting a review of the adequacy of a complaint, the Supreme Court has advised that trial courts use the following procedure:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. at 679.

Thus, following *Twombly* and *Iqbal*, a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation.  In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'  Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Santiago v. Warminster Tp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal,* 556 U.S. at 675, 679).

Particularly relevant to the present case, a complaint filed by a *pro se* litigant is to be liberally construed and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (internal quotation marks omitted). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). Thus, a well-pleaded *pro se* complaint must also contain more than mere legal labels and conclusions. Rather, a *pro se* complaint must recite factual allegations that are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

## IV. Discussion.

### A. Marin's Federal Claims.

Marin brings his claims under 42 U.S.C. § 1983, which provides, in pertinent part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party

injured in an action at law, suit in equity, or other property proceeding for redress.

*Id.* "Section 1983 is not a source of substantive rights, but merely a method to vindicate violations of federal law committed by state actors." *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284–85 (2002)). Therefore, a viable § 1983 claim requires the plaintiff to establish two indispensable elements: a deprivation of a federally protected right and that this deprivation was committed by a person acting under color of state law. *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005). In evaluating a § 1983 claim, a court must first "identify the exact contours of the underlying right said to have been violated" and then "determine whether the plaintiff has alleged a deprivation of a constitutional right at all." *Morrow v. Balaski*, 719 F.3d 160, 165-66 (3d Cir. 2013) (*en banc*) (internal quotations and citations omitted).

Nowhere in his brief in support of the pending motion to dismiss does Schmider contest the fact that he was a state actor during the time that Marin was seeking an EMT license. *See generally doc. 77*. Moreover, the Amended Complaint contains plausible allegations that Schmider was, in fact, acting under the "color of state law." *See, e.g., doc. 70* at 31 (asserting that Schmider claimed that he was "*required* by state law to refuse an EMT application without a social security number") (emphasis in original). We are thus left with the task of

ascertaining the precise contours of the rights Schmider purportedly violated.  We are further tasked with determining whether the Amended Complaint establishes a plausible deprivation of those rights.

### 1. First Amendment Retaliation Claim.

In the Amended Complaint, Marin asserts a First Amendment retaliation claim against Schmider.  *See generally doc. 70.*  Specifically, Marin alleges that after he complained to the "state office in Harrisburg" about the conduct of the individuals from the Meadville Office, and after he ultimately filed the 2011 Action against such individuals, Schmider continued to perpetuate the refusal to process his EMT application.  *Id.* at 2.  In support, Marin alleges that Schmider neither ordered the Meadville Office to process his application, nor lifted the "hold" that was placed thereon.  *Id.* at 3-4, 7.  According to Marin, Schmider's action (or perhaps inaction) was sufficient to deter a person of ordinary firmness from engaging in such protected speech.  *Id.* at 23.

In response to these allegations, Schmider argues, among other things, that Marin cannot establish the third element of his claim.  *Doc. 77* at 17-22.  Specifically, Schmider argues that Marin cannot establish the requisite causal connection between Marin's protected speech and his (Schmider's) alleged retaliation.  *Id.* at 19-22.  We agree.

11

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech . . . or the right of the people . . . to petition the Government for a redress of grievances." *Marin*, 15 F. Supp. 3d at 610 (quoting U.S. CONST. amend I). "In order to state a prima facie case for the violation of First Amendment rights under § 1983, [Marin must allege] that: (1) he engaged in a constitutionally protected speech; (2) he suffered retaliatory action sufficient to deter a person of ordinary firmness from exercising their constitutional rights; and (3) there was a causal link between the protected speech and the retaliation." *Marin*, 15 F. Supp. 3d at 611 (citing *Thomas v. Independence Township*, 463 F.3d 285, 296 (3d Cir. 2006)).

At the outset we find that Marin's earlier pleading (i.e., his second amended complaint), has no legal effect since it has neither been referred to, nor incorporated into the Amended Complaint. *See West Run Student Housing Assoc., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 171 (3d Cir.2013) ("'[T]he amended complaint supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading.'" (quoting *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1504 (3d Cir. 1996))) (quoted case and internal quotation marks omitted). Our finding, however, poses a problem for Marin. Specifically, the Amended Complaint offers different allegations from those set forth in Marin's prior

pleading. We believe that these different allegations illustrate that Marin has not satisfied the third element of his First Amendment retaliation claim—the causation element.[7]

"In order to establish causation, [Marin must allege] one of the following: (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with time to establish a causal link." *Marin*, 15 F. Supp. 3d at 611 (quoted case and internal quotation marks omitted). Marin's Amended Complaint includes no allegations of an "unusually suggestive temporal proximity" between (a) his complaints to the "state office in Harrisburg" and his ultimate filing of the 2011 Action, *and* (b) Schmider's refusal to either order the Meadville Office to process his EMT application or to otherwise lift the "hold" that was placed thereon. Schmider, after complaining to the "state office in Harrisburg," commenced the 2011 Action on July 20, 2011. The alleged retaliatory conduct, however, did not occur until December 28, 2012, nearly a year and a half later. *See doc. 70* at 2 (averring that "[t]he earliest clearly offending act of [Schmider] took place on or about December 28, 2012"). Accordingly, we find that this extended period of time is not "unusually suggestive" of retaliatory motive by Schmider. *See, e.g.*, *Revell v. City of Jersey City*, 394 F. App'x 903, 907 (3d Cir. 2010) (concluding that an alleged

---

[7] According to Schmider, these different allegations posit a "more accurate" story of the underlying events at issue. *Doc. 77* at 18 n.7.

retaliatory action, which occurred one year later, was insufficient to satisfy the "unusually suggestive temporal proximity" standard); *C.M v. Board of Educ. of Union Cnty. Reg'l High Sch. Dist.*, 128 F. App'x 876, 883 (3d Cir. 2005) (holding that a three-month gap between the protected conduct and the alleged retaliatory action was not "unusually suggestive of retaliatory motive"); *Fisher v. Transue*, No. 04–CV–2756, 2008 WL 3981521, at *10 (M.D. Pa. Aug. 22, 2008) (observing that precedent from the United States Court of Appeals for the Third Circuit "suggest[s] that the difference in time must be measured in days, rather than in weeks or months, to establish causation on its own[,]" and finding a "period of twenty-two days is too lengthy to give rise to an inference of causation").

Likewise, Marin's Amended Complaint includes no allegations of "a pattern of antagonism" coupled with timing.   *See Marin*, 15 F. Supp. 3d at 611.  Indeed, no antagonistic action is alleged to have been taken between (a) his protected speech—namely, his complaints to the "state office in Harrisburg" and the ultimate filing of his 2011 Action—*and* (b) the alleged retaliatory conduct relating to the processing of his EMT application.   Instead, there is an alleged non-retaliatory motive here: Schmider informed Marin that his EMT application could not be processed because he (Marin) had failed to list his social security in the application itself, as is required by Pennsylvania law.   Moreover, this is not the case where Marin cured his omission and resubmitted the application, yet Schmider continued

14

to refuse the requisite processing thereof.   Thus, while we acknowledge that the mere passage of time is not conclusive against retaliation, the extended period of time between Marin's protected speech and the alleged retaliatory action taken by Schmider weighs against a finding of a causal link, especially where, as here, there are no allegations of retaliatory animus during the intervening period.  *See Perna v. Twp. of Montclair*, 409 F. App'x 581, 584 (3d Cir. 2011).

Accordingly, we find that Marin has failed to state a First Amendment retaliation claim upon which relief can be granted, and as such, we recommend that Schmider's motion to dismiss be granted with respect to this claim.[8]

### 2. Fourteenth Amendment Substantive Due Process Claim.

In the Amended Complaint, Marin also asserts a Fourteenth Amendment substantive due process claim against Schmider. *See generally doc. 70*. Specifically, Marin alleges that Schmider deprived him of his right to follow his chosen profession as an EMT in Pennsylvania. *Id.* at 5.  Although Schmider moves for dismissal of this claim on the basis that Marin has not sufficiently pleaded a liberty interest in his EMT license (*doc. 77* at 22), we need not go that far to determine Marin's claim is wholly without merit.

---

[8] To the extent Marin claims Schmider retaliated against him by filing an exhibit in the 2011 Action, we briefly note Marin has failed to provide any plausible allegations in support thereof.  For instance, Marin has not alleged, nor can he, that Schmider was a party to that suit.  Marin has also not alleged that Schmider had the ability to effectuate a filing in that suit, despite being a non-party.

The Fourteenth Amendment to the United States Constitution provides, in pertinent part, that a state shall not "deprive any person of life, liberty, or property, without due process of law . . . ." U.S. CONST. amend. XIV, § 1.  At its core, due process seeks to insulate the individual from the "arbitrary exercise of the powers of government, unrestrained by the established principles of private right and distributive justice."  *Hurtado v. California*, 110 U.S. 516, 527 (1884) (quoting *Bank of Columbia v. Okley*, 17 U.S. 235, 244 (1819)); *accord Wolff v. McDonnell*, 418 U.S. 539, 558 (1974) ("The touchstone of due process is protection of the individual against arbitrary action of government[.]").  However, due process has, over time, "come to have both substantive and procedural components." *Evans v. Sec'y Pa. Dep't of Corr.*, 645 F.3d 650, 658 (3d Cir. 2011).[9]

---

[9] Although Marin's allegations implicate both the substantive and procedural components of the due process clause, we will not address the procedural component.  The cases cited by Marin in his Amended Complaint make it clear that he premises his procedural due process claim on a *property* interest in the EMT license.  *See, e.g.*, doc. 70 at 38 (citing *Reisinger v. Com., State Bd. of Med. Ed. & Licensure*, 399 A.2d 1160, 1164 (Pa. Commw. Ct. 1979) for the proposition that an individual has a *property* interest in practicing a chosen profession).  Because Marin's procedural due process claim premised upon a *property* interest has already been dismissed with prejudice by the Court (*see doc. 47* at 16 (recommending that Marin's procedural due process claim be dismissed with prejudice); *see also doc. 57* at 1 (adopting Report and Recommendation in its entirety)), we find that Marin may not reassert that claim here.

The substantive component of the due process clause limits what the government may do regardless of the fairness of the procedures that it employs. *Boyanowski v. Captial Area Intermediate Unit*, 215 F.3d 396, 399 (3d Cir. 2000). "'[T]he core of the concept' of due process is 'protection against arbitrary action[.]'" *Kaucher v. County of Bucks*, 455 F.3d 418, 425 (3d Cir. 2006) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998)). "[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense[.]" *Kaucher*, 455 F.3d at 425. Thus, executive action violates substantive due process only when the behavior of the governmental officer is so egregious and outrageous that it shocks the contemporary conscience. *Id.*

Here, we need not determine whether Marin has asserted a liberty interest in pursuing his calling as an EMT in Pennsylvania, because we easily find that the Amended Complaint includes no allegations that plausibly suggest Schmider's conduct was not only unreasonable, but rose to such an egregious level as to shock the conscience. *See United Artists Theatre Circuit, Inc. v. Twp. of Warrington, PA*, 316 F.3d 392, 399 (3d Cir. 2003) (explaining that the United States Supreme Court has observed that the core concept "of due process is protection against arbitrary action and that only the most egregious official conduct can be said to be arbitrary in the constitutional sense" (quoting *Lewis*, 523 U.S. at 845-46) (internal quotation marks omitted)); *see also Ashton v. City of Uniontow*n, 459 F. App'x 185, 189 (3d

17

Cir. 2012) (instructing, in the context of a substantive due process claim premised upon an asserted liberty interest, that "only the most egregious official conduct shocks the conscience"). The allegations in the Amended Complaint, even if ultimately proven true, do not satisfy this rigorous standard.

Accordingly, we find that Marin has failed to state a substantive due process claim upon which relief can be granted, and as such, we recommend that Schmider's motion to dismiss also be granted with respect to this claim.[10]

### C. Marin's State Law Claim.

Having determined that Schmider's Rule 12(b)(6) motion should be granted as to Marin's federal claims, we observe that the remaining claims in this action are Marin's state law claims over which this Court has supplemental jurisdiction.

Whether to exercise supplemental jurisdiction is a decision within the discretion of the Court. Specifically, 28 U.S.C. § 1367(c)(3) provides that district courts may decline to exercise supplemental jurisdiction over a state law claim if the district court has dismissed all claims over which it has original jurisdiction. When determining whether to exercise supplemental jurisdiction, "a federal court

---

[10] To the extent Marin is broadly alleging supervisory liability on the part of Schmider for the allegedly unlawful conduct of the individuals at the Meadville Office, we also briefly note that United States District Court Judge Cerone has already determined in the 2011 Action that such individuals acted lawfully. Marin, therefore, cannot continue his supervisory claim against Schmider, the alleged supervisor of those individuals, especially where Marin's allegations are no different here. *See Marin*, 15 F.Supp. 3d at 608-09.

should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ. v. Cahill*, 484 U.S. 343, 350 (1988)).  The United States Court of Appeals for the Third Circuit has held that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (quoting *Borough of West Miflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)).

We find that there is nothing unique about this case such that considerations of judicial economy, convenience, and fairness provide an affirmative justification for exercising supplemental jurisdiction after the Court disposes of the federal claims.  Accordingly, we recommend that the Court decline to exercise supplemental jurisdiction over Marin's state law claim for invasion of privacy.

## V.    Recommendation.

Accordingly, for the foregoing reasons, **IT IS RECOMMENDED** that Schmider's motion to dismiss (*doc. 74*) be granted in its entirety.   **IT IS ALSO RECOMMENDED** that Marin's claims be dismissed with **PREJUDICE** since he

was already granted leave to amend his prior pleading and since we now find that

allotting him further leave to amend would only be futile.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.   The briefing requirements set forth in Local Rule 72.2 shall apply.   A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this **14th** day of **September, 2016**.


**S/Susan E. Schwab**
Susan E. Schwab
United States Magistrate Judge